

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann
~~JOHN~~ ~~XXXXXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable R. V. Rayford
County Auditor
Rusk County
Henderson, Texas

Dear Sir:

Opinion No. O-4001
Re: (1) Whether school district may
issue warrants payable over a
term of several years.
(2) Whether taxes for fiscal year
beginning September 1, 1941, but
collected in August, 1941, are
for scholastic year 1940-1941.

We have received your letter of recent date which we quote in part as follows:

"I desire an opinion from you as to two questions pertaining to the public schools, with which we are confronted in this county. A large percentage of the scholastics of Rusk County are transported to schools by buses which are owned by the schools. Several of the school districts, lacking the funds to pay for buses in cash, have bought them on credit, paying part of the purchase price in cash and executing warrants of the school district, payable over a term of several years, for the balance. The first question to which I desire an answer is this: Do such notes or contracts for school buses constitute valid obligations, enforceable against the school districts incurring such obligations?"

Article 2749, Revised Civil Statutes, provides in part as follows:

". . . provided, that the trustees, in making contracts with teachers, shall not create a deficiency debt against the district."

It was held by the Supreme Court of Texas in the case of Collier v. Peacock, 54 S.W. 1025, that a board of trustees was not authorized to execute a teacher's contract which would cause a deficiency debt against the school fund of the district for any particular year. We quote the following from the opinion of the court:

"... This limitation upon the power of the trustees in making the contract with teachers necessarily limits the payment of the debts that might be contracted to the amount of the fund which belonged to the district for that year, and any debt contracted greater than that would be a violation of the law, and constitute no claim against the district."

The same principle has been extended and applied not only to teachers' contracts but also to other obligations, such as the purchase of equipment, and permanent improvements to the school property.

You cited in your letter the case of Templeman Common School District v. Boyd B. Head Company, 101 S.W. (2d) 352. In this case two warrants were issued in payment of septic toilets. These were renewal warrants, and were dated February 22, 1933, due February 22, 1934, and April 1, 1934. There was no showing that the district had any available funds on hand for the year for which the purchase was made, and the court in holding that recovery could not be had on said warrants had the following to say:

"While the language used in said statute refers specifically to a deficiency created in the employment of teachers, it has been held that it applies with equal force to debts incurred in the purchase of equipment. In this connection, the Court of Civil Appeals in Stephenson v. Union Seating Co., 26 Tex. Civ. App. 16, 62 S.W. 128, 129, in referring to the holding of the Supreme Court in Collier v. Peacock, supra, said:

"' It is held that a warrant for a teacher's salary in excess of the sum apportioned to the district for the year cannot be made a charge upon the fund of a subsequent year. Article 3959 (now Article 2749) was construed as a limitation upon the power of the trustees to contract any debt which would cause a deficiency in the school fund of the district. While the article applies alone to contracts for teachers' salaries, we think the construction placed upon it by the supreme court applies with equal force to the articles controlling the purchase of school furniture.'

"The Supreme Court refused a writ of error in that case. This seems to be the logical construction to be placed on the statute, for its purpose, at least in part, is to avoid a dissipation in advance of the funds to be appropriated for the support of the school during subsequent years and thus render more certain the maintenance of a public free school in each district for at least

six months in each year, as called for in article 7,
§ 3, of the Constitution; and, if in keeping with
that purpose a deficiency debt cannot be created in
the employment of a teacher, the one indispensable
essential of a school, it reasonably follows that
such a deficiency cannot lawfully be created in the
purchase of equipment. See in this connection 37
Tex. Jur. 972; Warren v. Sanger Independent School
Dist., 116 Tex. 183, 288 S.W. 159."

The same doctrine has been applied to independent school districts. First Nat. Bank of Athens v. Murchison Independent School Dist., 114 S.W. (2d) 382; Trustees of Crosby Independent School Dist. v. West Disinfecting Co., 121 S.W. (2d) 661. In the Murchison case, the suit was upon warrants maturing one, two and three years after date, bearing six per cent interest, payable out of the local maintenance fund for furniture or money advanced to purchase furniture. The following was stated by the court:

"Nor were there, for particular years over and
above the amounts necessary to conduct the school any
available funds out of which these debts could be paid."

We quote from the opinion of the Commission of Appeals in the case of Harlingen Independent School Dist. v. C. H. Page & Bro., 48 S.W. (2d) 983:

"From the above it is evident that the powers of
the school board to expend the funds of the district
are at all times limited to an available fund, and to
the particular thing prescribed by the statute. The
board never has any authority to expend funds that are
not available."

We see no reason to differentiate the announced doctrine as to the purchase of school buses, and we think that the language employed in the cited cases is amply broad to cover such purchases. It follows, therefore, that the warrants given in payment of the buses are invalid.

We quote further from your letter:

"The fiscal year for schools runs from the first
of September of one year to the first of the same
month of the next year. Several of the larger school
districts in Rusk County are in the oil field. In or-
der to get the two per cent. discount offered by the
taxing authorities for payment of advalorem taxes for
the year 1941, many taxpayers have paid their taxes in
full in August, my information being that approdimately

ninety percent. of the 1941 taxes were paid in
that month. The second question I submit to you
is this:  Do such taxes which are collected in
August, 1941, become a part of the school funds
for the scholastic year 1940-1941, making the
same available for the payment of school obliga-
tions incurred during that year, or do such taxes
constitute a fund for the operation of the schools
for the scholastic year 1941-1942?

"If your answer to the last question is that
such taxes may be applied to payment of obligations
incurred for the year 1940-1941, then please answer
this further question:  Could such taxes so collect-
ed in August, 1941, be lawfully applied to the pay-
ment of a warrant issued during 1940 for part of the
purchase price of a bus purchased at the time which
such warrant was issued?"

We assume that the allowance of a discount was  made under
the provisions of Article 7255b, Vernon's Annotated Civil Statutes,
which authorizes a discount on ad valorem taxes under the terms set
out in the statute.

Regardless of the fact that the taxes were collected before
September 1, 1941, which marked the beginning of the new fiscal year
1941-1942, they were assessed for that fiscal year, and, therefore,
constitute a fund for the operation of the schools during that year.
It follows, in view of our answer to your first question, that such
tax moneys may not be used for the payment of obligations incurred
during the fiscal year 1940-1941.

Our answer to your second question renders unnecessary an
answer to your third question.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By
   s/ Glenn R. Lewis
    Glenn R. Lewis
       Assistant

By
   s/ George W. Sparks
    George W. Sparks

APPROVED OCT 2, 1941

s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL